# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANIEL E. FRIEBEL,

        Plaintiff,

v.                                     Case No. 06-C-0314

JUDGE MARGARET J. O'GRADY,
JUDGE KAREN A. CORNICK, and
JO ANNE B. BARNHART,

        Defendants.

## DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION AND DISMISSING CASE

        Daniel Friebel seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits. Administrative Law Judge ("ALJ") Margaret J. O'Grady determined Friebel is not disabled because his impairments do not meet or equal the requirements for any impairment or combination of impairments set forth in the "Listing of Impairments" and because his previous job as a manufacturing engineer, as performed in the general economy, is consistent with his ability to perform light work. (R. at 24-25.) Friebel appeals pro se arguing that the ALJ disregarded the opinion of his treating physician and that his condition renders him unable to perform any work in the national economy. For the reasons set forth below, the ALJ's decision is affirmed.

## I. FACTS

        Friebel was born on May 13, 1952, making him fifty-three years old at the time of the ALJ's decision. (R. at 278.) Friebel has a high school diploma and has completed four years of college in management training. (R. at 55.) His previous work experience

includes performing the duties of a manufacturing engineer, delivery worker, dairy plant worker, and vending delivery worker. (R. at 280-283.) Prior to October 2004, Friebel owned and operated a vending business. (R. at 208.)

Friebel first applied for disability insurance benefits on June 13, 2002. (R. at 22.) He claimed that he has been unable to work starting February 15, 2002, due to symptoms from fibromyalgia. (R. at 221.) In April 2002, Friebel slipped and fell from his delivery truck and, the same day, was involved in an automobile accident. (R. at 187, 300.) These events led to a general deterioration in Friebel's health. (R. at 118, 300.) Approximately three weeks after the accident, on April 19, 2002, Dr. Stephen R. Dernlan treated Friebel for complaints of myalgias, arthralgias, stiffness, and fatigue. (R. at 118.) As a consequence, Friebel was diagnosed with possible fibromyalgia. (R. at 118, 125.) He was officially diagnosed with fibromyalgia in May 2002 by Dr. Julie Wilson. (R. at 152.)

Friebel had a follow-up appointment with Dr. Dernlan on May 6, 2002. (R. at 124.) On that date, Friebel rated his pain as three out of ten. (R. at 125.) On June 3, 2002, Friebel returned to Dr. Wilson complaining of insomnia, numbness and tingling in his hands. (R. at 123.) After a physical examination, Dr. Wilson noted that Friebel's neck range of motion was good and the range of motion of his lumbar spine and shoulders was "mildly limited." (R. at 125.) The doctor instructed Friebel to take his prescription medication regularly to alleviate the symptoms. (*Id.*)

On January 21, 2003, a state agency consultant evaluated Friebel's condition and determined he could lift and carry twenty pounds occasionally, lift and carry ten pounds frequently, stand, walk, or sit for six hours, and push or pull without limitation. (R. at 127.) Additionally, the doctor found Friebel capable of performing light level work. (R. at 126-33.)

2

Similarly, a state agency psychology consultant determined Friebel had no severe psychological impairment. (R. at 168.)

Friebel began seeing Dr. Eric C. Gowing in December 2002. (R. at 148-52.) On February 26, 2003, Friebel told his physician that he could perform heavy lifting for about two to three hours per day but was concerned he would be unable to continue doing physical labor due to muscle pain and stiffness. (R. at 146.) Dr. Gowing noted that Friebel "cannot sustain a full time job in physical labor." (R. at 147.) Moreover, Dr. Gowing noted guaifenesin "mildly improved" the fibromyalgia symptoms and increased the dose to better manage the symptoms. (*Id.*)

On April 2, 2003, Friebel again had an appointment with Dr. Gowing for a flare-up of his fibromyalgia. (R. at 142.) Friebel reported difficulty "doing any work past the early afternoon which often aggravate[d] his musculoskeletal pain." (*Id.*) The doctor recommended Aleve and prescribed Darvocet to be used only if the Aleve was ineffective as well as a muscle relaxer, Flexeril, to help with sleep. (*Id.*)

On July 25, 2003, Friebel had a follow-up appointment with Dr. Gowing. (R. at 137.) Friebel stated he had difficulty performing the heavy lifting tasks involved in his ownership of a vending company. (*Id.*) Dr. Gowing's exam revealed:

> no obvious swelling in the small joints of the hands or wrists. There was diffuse myofascial tender points notably over the lateral and medial epicondyles bilaterally, the occipital insertions bilaterally, the trapezia and subscapularis bilaterally, lumbar paravertebral bilaterally, and the greater trochanters bilaterally.

(*Id.*) Following his examination, Dr. Gowing concluded that Friebel could "tolerate doing part-time work." (*Id.*)

On October 9, 2003, Friebel again saw Dr. Gowing, largely to fill out paperwork for long-term disability. (R. at 135.) On the basis of seven office visits over three years, Dr.

3

Gowing concluded that Friebel was fully disabled on July 25, 2003. (R. at 262, 267.) The doctor's assessment was that Friebel was able to sit for six hours and stand or walk for less than one hour in an eight-hour day. (R. at 265.) He also determined that Friebel can lift and carry up to ten pounds occasionally. (*Id.*) In Dr. Gowing's opinion, Friebel's condition prevents him from pushing, pulling, kneeling, bending, and stooping. (R. at 266-67.) Moreover, Dr. Gowing concluded Friebel is incapable of even a low stress job due to chronic fatigue and pain that requires rest every two to three hours. (R. at 265-66.) From October 2004 until the hearing date, Friebel did not receive much medical attention for his fibromyalgia. (R. at 23.)

## II. HEARING

On February 23, 2005, the ALJ conducted a hearing. (R. at 269.) Friebel appeared via video with his attorney, Joseph F. Dunn; vocational expert Leslie Goldsmith testified in person. (*Id.*)

### A. Friebel's Testimony

Friebel testified that he has pain in his left hip, hands, left elbow, left knee, feet, neck, left shoulder, and lower back. (R. at 289-99.) The pain varies from a few days per week to almost daily and the duration spans from hours to days. (*Id.*) According to Friebel, he applies "topical pain medication which sometimes alleviates most of the symptoms along with Darvocet," a prescription pain medication. (*Id.*) Additionally, Friebel takes numerous herbs for the symptoms. (R. at 294.) Friebel stated that activity usually worsens his pain. (R. at 290.) He explained that "[f]atigue typically sets in after two to five hours" of "doing anything," including sitting or reading, and then he must recline for anywhere between fifteen minutes to one hour and a half to recuperate. (R. at 303-04.) If he "only [had work] to do [he] might be able to spend five or six hours a day" working. (R. at 302-03.)

Friebel discussed remodeling work that he performs on his house and the homes of his friends. (R. at 294-96.) He fabricates, cuts, paints, and hangs rod iron and wooden handrails. (R. at 294-95.) In addition, Friebel installs and paints trim work around doors and windows, installs cabinet doors, does electrical wiring, installs outlets, switches, and lights, and performs floor work. (R. at 295-96.) Further, Friebel is able to take care of his home by doing dishes, cleaning, vacuuming, and mowing the lawn, can attend to his personal care needs without assistance. (R. at 296.)

### B. Vocational Expert Testimony

The Vocational Expert (VE), Leslie Goldsmith, testified that Friebel's past work experiences were all medium to heavy work as performed. (R. at 313.) The VE continued that Friebel's past jobs as an engineer, truck driver, and vending worker gave him skills that could transfer to light or sedentary jobs. (R. at 313-14.)

> From the engineering job there would be transferable skills, the ability to do various calculations and proposals, word processing for bids which he did or proposals as well as the design work. Those would transfer to other types of similar types of jobs. The vending work involved a certain amount of retail, customer service which would be transferable. And the truck driving, that would be—the driving aspect of it would be transferable to lighter duty jobs also.

(*Id.*)

The ALJ then posed several hypothetical scenarios. The first assumed a person fifty-two years old with a high school education and Friebel's vocational history, limited to light exertional work, with occasional climbing, stooping, kneeling, crawling, balancing, and crouching. (R. at 314.) The VE testified that Friebel was qualified for several types of jobs that accommodate these limitations. (R. at 314-16.) Friebel could return to work as a manufacturing engineer, which is typically performed at the sedentary level in the

5

economy. (R. at 314.) However, the VE did not have a listing for the number of manufacturing engineer positions in the state, but looking at the numbers for industrial engineers and mechanical engineers, the VE stated there would be several thousand jobs within those two categories that Friebel would be qualified to perform. (R. at 315.)

Also, Friebel would be qualified for other light duty and sedentary jobs including retail clerk or sales clerk, light assembly work, general inspection jobs, light delivery jobs, and general office work. (R. at 316.) There are about 80,000 retail clerk jobs, 25,000 light assembly positions, 15,000 general inspection jobs, 30,000 light delivery jobs, and 70,000 general office clerk positions in the state of Wisconsin. (*Id.*)

The ALJ's second hypothetical asked how those numbers would change if the person needed to alternate positions, sitting, standing as needed. (R. at 316.) The VE testified that those limitations would eliminate the sales clerk position but other jobs would remain. (R. at 316-17.) The engineering jobs would not be affected at all. (R. at 317.) The assembly and inspection positions would be reduced by about twenty percent and the general office clerk positions would be cut in half. (R. at 316-17.) Next, the ALJ asked how the jobs would be affected if the person could not repetitively use his hands. (R. at 317.) That would eliminate the assembly and inspection jobs but it would not affect the number sales clerk positions or delivery jobs. (*Id.*) It would eliminate half of the office jobs as well as half of the engineering jobs. (R. at 317-18.) Finally, the VE stated no job in the national economy would accommodate more than four absences per month. (R. at 319.)

### III.  THE ALJ'S DECISION

On May 25, 2005, the ALJ issued a decision denying Friebel disability insurance benefits. (R. at 22-26.) The ALJ followed the five-step sequential inquiry to determine whether Friebel was disabled. *See* 20 C.F.R. § 416.920. The steps are as

6

follows: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in the "Listing of Impairments," 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is unable to perform other work in the national economy. *Id.*; *Clifford v. Apfel*, 227 F.3d 863, 868 (*quoting Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)). Through step four, the burden is on the claimant. *Id.* If those steps are proven, then the burden shifts to the Commissioner to establish step five. *Id.*

In the present case, the ALJ found that the first two steps were satisfied. (R. at 23-24.) At step one, she found that although Friebel alleged disability commencing February 2002, he performed substantial gainful activity until October 2004 when he sold his vending business. (R. at 23.) The ALJ found he had not performed substantial gainful activity since October 2004. (*Id.*) At step two, Friebel alleged he suffered from "carpal tunnel syndrome, sleep disorder, fibromyalgia and neuropathy." (R. at 23.) The ALJ found the medical records and testimony established that all of these conditions were "severe impairments." (R. at 24.)

However, at step three, the ALJ found "the claimant's impairments do not meet or equal the requirements for any impairment or combination of impairments in the Listing of Impairments." (*Id.*) Based on the record and objective medical data, the ALJ found Friebel could perform light work. (R. at 25.) This determination was supported by evidence from Friebel's diagnosing physician, the state agency evaluation, as well as Friebel's ability to help friends with home building and construction tasks such as wiring, flooring, trim work, and cabinet installation. (R. at 25, 126-33 207, 294-96.) These activities involve stooping, bending, working overhead, and use of the arms and hands. (R. at 25.) The ALJ

7

determined these types of activities are consistent "with at least light exertional work." (*Id.*) Therefore, the ALJ found Friebel was not disabled under the provisions of 20 C.F.R. § 404.1520(e) and denied benefits. (R. at 25.)

At step four, the ALJ found that Friebel could not perform his past work because they required medium to heavy exertional levels. (*Id.*) However, at step five, the ALJ concluded he could perform his past work as a manufacturing engineer as it is performed in the general economy. (*Id.*) The VE testified that manufacturing engineering positions are usually categorized as skilled, sedentary jobs. (R. at 25, 313.) The ALJ also relied on the VE's testimony that Friebel had transferable skills that would allow him to perform the jobs of sales clerk, light assembly worker, general inspection, light delivery, and general office worker. (R. at 316.)

## IV. ANALYSIS

The Social Security Act limits the scope of judicial review. If an ALJ's decision is supported by substantial evidence and based on the proper legal criteria, a reviewing court must uphold it. 42 U.S.C. § 405(g); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (*quoting Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). The court reviews all the evidence in the record, but may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence would allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

8

Friebel argues that the ALJ's decision is not supported by substantial evidence. (Pl.'s Resp. to Def.'s Mem. in Supp. at 2.) He makes five arguments in support of this charge: (1) the ALJ ignored Dr. Gowing's opinion that he is disabled; (2) the ALJ unjustifiably rejected Friebel's testimony regarding his symptoms because fibromyalgia cannot easily be identified by medical tests; (3) "the Social Security Administration, in the past, gave full benefits to other claimants with identical, or even less severe conditions"; (4) the ALJ ignored the VE's testimony that there are no jobs in the economy if four or more days are missed per month; and (5) Friebel was "severely medicated for pain and under the influence of prescription drugs" at the hearing and his inability to directly answer questions should not be used to deny him benefits. (Pl.'s Resp. to Instructions from the Ct. at 1-3.)

**A. The ALJ Did Not Improperly Reject the Opinion of Friebel's Treating Physician**

An ALJ may discount a treating source's opinion if it is inconsistent with the opinion of a consulting physician, as long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (*quoting Clifford*, 227 F.3d at 870). Deference to the treating physician's opinion does not apply if the "opinion was contradicted by several other examining and non-examining physicians' opinions." *Young v. Barnhart*, 362 F.3d 995, 1001-02 (7th Cir. 2004). Even if a treating source's medical opinion is well-supported by medically acceptable evidence in the record, the ALJ need not give the opinion controlling weight if it is inconsistent with other substantial evidence in the record. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).

Friebel argues that the ALJ did not give the necessary weight to the opinion of his "primary and current physician Dr. Gowing." (Pl.'s Resp. to Instructions from the Ct.

at 2.) Rather, Friebel contends the ALJ based her decision on the medical opinion of doctors who are less familiar with his current condition. (*Id.*)

At step three, the ALJ determined that Friebel's condition does not meet the requirements in the List of Impairments. It is the claimant's burden at this step to establish that the condition meets a listed impairment. *Clifford*, 227 F.3d at 868. However, Friebel did not meet this burden. Dr. Gowing never opined that Friebel's condition or combination of conditions meets or equals the criteria listed. Conversely, the state agency physician concluded explicitly that Friebel's condition falls short of the listed impairments. (R. at 27-28.) The ALJ did not have Dr. Gowing's opinion on this matter to consider, much less reject, at step three of the analysis.

At step five, the ALJ concluded that Friebel has the ability to perform light duty work. Two of the three doctors on record, including a different treating physician, agree that Friebel has the capacity perform light duty work. (R. at 126-33, 207.) Dr. Wilson, the diagnosing physician, indicated that in her objective medical opinion Friebel was capable performing light duty work. (R. at 207.) Additionally, the state agency physician also concluded that Friebel could work part-time despite his impairments. (R. at 126-33.) The ALJ relied on these opinions in her decision. (R. at 25.) Because a treating and non-treating doctor disagree with Dr. Gowing's opinion, the ALJ's decision was supported by substantial evidence. A reasonable mind might accept the opinion of two doctors, including one treating physician, over one dissenting opinion as adequate to support a conclusion that Friebel is not fully disabled.

Moreover, Dr. Gowing's evaluation is consistent with the state agency doctor's opinion in all relevant respects except for the final determination of ability to work part-time. (R. at 137.) Both agree that Friebel is capable of lifting and carrying up to ten pounds

10

occasionally and that he is capable of sitting for six hours and standing for one hour in an eight hour day. (R. at 127, 265.) Additionally, Dr. Gowing's July 25, 2003, clinic notes state that Friebel is "capable of doing part-time work." (R. at 137.) Interestingly, this is the same date, July 25, 2003, that Dr. Gowing determined Friebel became fully disabled when he completed the disability papers on November 26, 2005. (R. at 267.) Because the record contains substantial evidence that is inconsistent with Dr. Gowing's opinion, the ALJ's determination is upheld.

## B.  The ALJ Did Not Discount Friebel's Fibromyalgia Symptoms

Friebel also claims that fibromyalgia is a type of illness that "is difficult or impossible to accurately detect . . . without extensive and prohibitively expensive testing" and that "these types of disorders . . . cannot be dismissed off hand." (Pl.'s Resp. to Instructions from the Ct. at 2.) Therefore, according to Friebel, the ALJ's finding that he was not fully disabled should be rejected.

It is widely accepted that, in most cases, there will be no objective medical evidence indicating the presence or severity of fibromyalgia. *See Gister v. Massanari*, 189 F. Supp. 2d 930, 934-35 (E.D. Wis. 2001); *Criner v. Barnhart*, 208 F. Supp. 2d 937, 951 (N.D. Ill. 2002); *Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill. 1998). In cases where the objective medical evidence does not support the alleged extent of pain, the ALJ must obtain detailed descriptions of a claimant's daily activities by directing specific inquiries about the pain and its effects on the claimant. *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). The "ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight*, 55 F.3d at 314. Rather, this is but one factor to consider, along with the claimant's "daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage,

11

effectiveness and side effects of medication; treatment other than medication; any measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions." *Patterson v. Barnhart*, 428 F. Supp. 2d 869, 880 (E.D. Wis. 2006) (*citing* 20 C.F.R. § 404.1529(c)(3)).

The ALJ explored these factors during Friebel's testimony. She noted the lack of objective medical evidence but gave weight to Friebel's testimony about his symptoms. (R. at 24.) At step two of the analysis, the ALJ found that Friebel suffered from fibromyalgia, as well as carpal tunnel syndrome, sleep disorder, and neuropathy. (R. at 23.) She further noted that the medical records and testimony established that all of these conditions were "severe impairments." (R. at 24.) However, the ALJ also gave weight to the rest of Friebel's testimony, the doctors' evaluations, and the VE's testimony. Specifically, Friebel testified that he was capable of performing home repairs which required lifting, bending, and stooping. (R. at 294-96.) He testified he could work for two to five hours before needing a rest and that he could work five to six hours per day if that were all he needed to do. (R. at 302-304.) He also stated that medicine often relieves the symptoms. (R. at 289-90.) This testimony supports the ALJ's decision that Friebel is not fully disabled. In addition, the medical evaluations from Friebel's doctor and the agency doctor stated Friebel is capable of lifting and carrying up to ten pounds, sitting for up to six hours per day, and standing or walking up to one hour per day. (R. at 127, 265.) This constitutes substantial evidence supporting the ALJ's finding that Friebel is not fully disabled and is capable of performing light duty work.

### C. Reference to Other Cases is Irrelevant for the Present Case

Friebel contends that "the Social Security Administration, in the past, gave full benefits to other claimants with identical, or even less severe conditions, and all other

12

circumstances being virtually equal." (Pl.'s Resp. to Instructions from the Ct. at 3.) However, he does not bring forth any facts or examples for this court to evaluate the veracity of this claim. Moreover, other cases, with different facts and circumstances, are not controlling with respect to this appeal. Friebel had a full opportunity to present his case before the ALJ and the ALJ issued a decision based on the evidence before her.

### D. The ALJ Properly Evaluated the VE's Testimony

Friebel maintains that the ALJ "ignored" the VE's testimony that there would be "no jobs available . . . in the national economy for an individual who was absent more than four times a month." (Pl.'s Resp. to Instructions from the Ct. at 3.) Success of this argument requires Friebel to establish that his medical condition would, in fact, require him to miss more than four days of work per month. *Clifford*, 227 F.3d at 868 (noting that it is the claimant's burden to establish the severity of his medical condition). Again, Friebel did not meet his burden.

The only support for Friebel's contention that he would miss four days of work per month is from Dr. Gowing. (R. at 275-76.) As discussed above, the ALJ has the authority to reject a treating physician's opinion when it is contradicted by substantial evidence and not based on objective medical evidence. *Skarbek*, 390 F.3d at 503; *Young*, 362 F.3d at 1001-02. Two other doctors, including a treating physician, disagreed with Dr. Gowing's assessment. (R. at 137, 207.) In addition, Friebel testified that he did rather extensive home improvement projects that were consistent with light duty work. (R. at 25, 294-96.) Therefore, there is substantial evidence to support the ALJ's conclusion that Friebel can perform a number of light duty or sedentary jobs available in the economy.

### E. Any Side-effects From Friebel's Medication Did Not Impact the Outcome of the ALJ's Decision

Friebel argues his inability to answer questions directly should not be a reason to deny him benefits because he was "severely medicated for pain and under the influence of prescription drugs." (Pl.'s Resp. to Instructions from the Ct. at 3.) The ALJ's opinion did not cite Friebel's inability to directly answer questions as a reason for her decision. (*See* R. at 22-26.) Additionally, at the hearing, Friebel testified that he experienced no side-effects from his medications. (R. at 305.) Therefore, in light of the record, this argument lacks factual support and it had no bearing on the ALJ's decision.

For the reasons set forth above,

**IT IS ORDERED** that the plaintiff Commissioner's denial of Friebel's application for disability insurance benefits is affirmed.

**IT IS FURTHER ORDERED** that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2008

        BY THE COURT:

        s/ C. N. CLEVERT, JR.
        C. N. CLEVERT, JR.
        United States District Judge